1

2

3

4

Glenn Katon SBN 281841
KATON.LAW
385 Grand Avenue, Suite 200
Oakland, CA 94610
gkaton@katon.law
(510) 463-3350
(510) 463-3349 (fax)

5

ATTORNEY FOR PLAINTIFF

6

7

8

9

10

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

11

12

13

14

15

16

17

18

19

NICHOLAS JACOBSON,

Plaintiff,

v.

CONTRA COSTA COUNTY, CONTRA
COSTA COUNTY SHERIFF'S
DEPARTMENT, and DOES 1-20 (in their
individual and, where applicable, official
capacities),

Defendants.

Case No.  3:18-cv-04070-WHA

**AMENDED COMPLAINT**

**DEMAND FOR JURY TRIAL**

20

Plaintiff files this Amended Complaint against Defendants, based upon the following:

21

22

**NATURE OF THE CASE**

23

24

25

26

27

1.       This is a civil rights and negligence case in which Defendant Contra Costa County
and up to 20 individuals violated the United States Constitution, federal statutes, and state law by
their deliberate indifference and failure to adequately treat Plaintiff Jacobson's serious medical
needs and beating him while he was defenseless with the intent to intimidate, threaten and coerce
him.

28

2.      Plaintiff arrived at Martinez Detention Facility (MDF), a Contra Costa County jail, with a lumbar spine fracture, an open wound on his leg, and Type One Diabetes. MDF jail staff were well aware of these conditions because Plaintiff informed them of his conditions and they were described in the medical records that accompanied him upon his transfer to MDF from Sutter Health Memorial Hospital (Sutter Hospital).

3.      Despite the knowledge of MDF jail staff of Plaintiff's serious medical conditions, Defendants denied him adequate insulin for weeks; failed to provide him with surgery on his spine that was medically recommended and which he needed desperately; and ignored the infection on his leg.

4.      As a result of Defendants' deliberate indifference to Plaintiff's serious medical needs, he endured weeks of excruciating pain with little or no pain medicine until he received four surgeries on his back, went into organ failure and two separate comas because of his mistreated diabetes, and the infection on his leg spread to his heart, lung, and sternum, also requiring multiple surgeries.

5.      Defendants' failure to treat his medical needs and accommodate his disabilities also discriminated against him by denying him access to MDF facilities.

6.      While Plaintiff was incapacitated, Doe Defendants cuffed his wrists to to opposite sides of his hospital bed for up to 30 hours at a time for no reason other than to torture him, and, while he was cuffed and shackled in the hospital bed would further torment him by twisting his ears, bending his fingers backwards, and slapping his face.

7.      Inadequate treatment and physical therapy following his surgeries has left Plaintiff in continuing pain and the inability to walk properly.

## JURISDICTION AND VENUE

8.      Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1343(a)(3) and (a)(4), which provide for original jurisdiction of all suits brought pursuant to 42 U.S.C. § 1983. Jurisdiction is also conferred by 28 U.S.C. § 1331 because claims for relief derive from the Constitution of the United States and the laws of the United States. The Court has supplemental

1    jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367.

2         9.      Venue is proper in the United States District Court for Northern District of

3    California pursuant to 28 U.S.C. § 1391, because the events and circumstances giving rise to

4    Plaintiff's claims occurred in Contra Costa County.

5         10.     Intradistrict Assignment: This case should be assigned to the San Francisco or

6    Oakland Division of this Court pursuant to Local Rule 3-2(d), because the claims arise in Contra

7    Costa County.

8                                            **PARTIES**

9         11.     Plaintiff Nicholas Jacobson is 28-years old. At all times relevant to this lawsuit he

10   has been a pretrial detainee in the custody of the Contra Costa County Sheriff.

11        12.     Defendant Contra Costa County is a public entity, duly organized and existing

12   under the laws of the State of California. Under its authority, Defendant Contra Costa County

13   operates and manages Contra Costa County Jail, including Martinez Detention Facility and is, and

14   was at all relevant times relevant to this case, responsible for the actions and/or inactions and the

15   policies, procedures and practices/customs of the Contra Costa County Sheriff's Department and

16   its respective employees and/or agents.

17        13.     Defendant Contra Costa County Sheriff's Department operates Contra Costa

18   County Jails, and is and was responsible for ensuring that its custody of prisoners complies with

19   all applicable laws, including, but not limited to, the provision of emergency and basic medical

20   care services to all Contra Costa County Jail prisoners.

21        14.     Doe Defendants 1-20 are individuals who acted with deliberate indifference to

22   Plaintiff's serious medical needs, and his health and safety, and/or inflicted on Plaintiff excessive

23   use of force. Plaintiff does not know the names of the Doe Defendants because their actions and

24   inactions took place while Plaintiff was in acute medical distress and/or while he was

25   unconscious. Plaintiff will substitute the true identities of the Doe Defendants when he learns

26   them.

27

28

AMENDED COMPLAINT 3:18-cv-04070-WHA                                                    Page 3

1

**EXHAUSTION OF PRE-LAWSUIT PROCEDURES**

2     15.     Plaintiff submitted his Government Code Claim that was received by Defendant

3   Contra Costa County on December 27, 2017. The County denied Plaintiff's claim by notice

4   mailed January 9, 2018.

5     16.     Plaintiff exhausted the grievance process at MDF to the extent he was capable in

6   light of his incapacitating medical conditions, comas, and surgeries.

7     **FACTS**

8     17.     On June 21, 2017, Plaintiff was transferred from Sutter Hospital to Martinez

9   Detention Facility (MDF). He had been hospitalized following a car accident.

10     18.     As soon as he was transferred to MDF, he began receiving grossly inadequate

11   medical care, resulting in unnecessary severe pain, the spread of an infection to his heart, lung,

12   and sternum, organ failure, and causing him to fall into two comas. Fortunately, he regained

13   consciousness from the comas, but he has continued to receive grossly inadequate medical care,

14   including little to no physical therapy following four back surgeries, virtually no effort to limit his

15   ongoing pain, and has likely suffered permanent injuries, all caused by MDF's deliberate

16   indifference to his serious medical needs.

17     **Diabetes**

18     19.     Since the age of 13, Plaintiff has had Type One Diabetes Mellitus. He was,

19   nevertheless, able to live a normal life and regulate his blood sugar with proper medical care and

20   his own training on how to maintain healthy blood sugar levels.

21     20.     When he began being detained at MDF, the facility provided Plaintiff insulin only

22   sporadically and at grossly inadequate doses, even though the amount of insulin he required was

23   clear from his medical records and his informing staff. His prescribed dose was 15-20 units per

24   meal; however, the jail provided him only 1-2 units per meal.

25     21.     The first ten days he was at MDF his blood sugar levels fluctuated from 300 mg/dl

26   to as high as 500. Normal blood sugar levels for someone with diabetes are 80-130 or, within two

27   hours after meals, under 180. The ordinary standard of medical care requires that a diabetic with

28

blood sugar above 240 be treated immediately, and above 300 is extremely dangerous and requires intervention by a physician.

22.     Although it was obvious from his blood sugar levels that Plaintiff's diabetes was not being treated properly, Plaintiff, his mother, and his lawyer also informed MDF staff numerous times that his blood sugar was way too high, that Plaintiff appeared "out of it," was slurring his speech, had abdominal pain, and was vomiting, all of which are symptoms that his diabetes was being grossly mismanaged.

23.     Out of desperation, Plaintiff's mother delivered insulin to the jail for her son.

24.     On June 25, 2017, Plaintiff was in so much pain and was so weak that he could not walk. To speak to his mother, he crawled to the telephone.

25.     By July 5, 2017, when his blood sugar reached 500, Plaintiff lapsed into a coma.

26.     On July 9, 2017, while Plaintiff was still in a coma, the treating physician asked Plaintiff's mother to visit him to say goodbye, as his organs were failing because "they couldn't get his fever down or diabetes under control."

27.     Soon thereafter, doctors performed emergency surgery to save Plaintiff's life. He later regained consciousness, but fell into a second coma in August.

**Spine Fracture and Infection**

28.     Plaintiff was diagnosed with a lumbar spine fracture at Sutter Hospital immediately preceding his transfer to MDF. He arrived at MDF with not only a spinal fracture but also an open wound on his leg.

29.     Plaintiff, along with his lawyer, made multiple requests for him to receive back surgery because he was in excruciating pain and at times could not walk, such that he had crawl to move about the jail. A Doe Defendant, the jail's attending doctor told him he did not need back surgery, which was grossly below the medical standard of care.

30.     For months after Plaintiff arrived at MDF, Defendants failed to provide him with a wheelchair, even though he could not walk.

31.     On June 26, 2017, Plaintiff requested a back brace. His request was denied and he

1    was told that if he did not arrive with a back brace, the jail would not provide one.

2          32.    Later, after unnecessarily enduring several weeks of the worst pain he had

3    experienced in his life with little or no pain medicine, Plaintiff underwent four surgeries on his

4    back.

5          33.    After his multiple back surgeries, MDF has provided Plaintiff minimal, sporadic

6    physical therapy, which is essential to his recovery. As a result, he cannot walk properly. It is not

7    clear if his condition is now permanent or if he could walk normally again if MDF were to

8    provide the physical therapy he needs.

9          34.    On more than one occasion after requesting physical therapy, MDF guards told

10   him to try to walk with his walker as physical therapy, as if that alone would lead him to

11   recovery, then mocked him as he struggled.

12         35.    When Plaintiff arrived at MDF, he also knew there was something very wrong

13   with the wound on his leg. He requested medical care for what he thought might have been a cyst

14   that burst. After it burst, Plaintiff experienced dizziness, stomach pains, diarrhea, and vomiting.

15   The MDF staff's response to his request for treatment for what appeared to be a serious infection

16   was "request denied . . . I went to see you already and this issue is resolved."

17         36.    In fact, the infection in Plaintiff's leg spread to his heart, sternum, and lung,

18   requiring several additional surgeries. Doe Defendants' failure to properly treat his diabetes

19   interfered with his healing from the surgeries and infection. Had MDF staff not been deliberately

20   indifferent to Plaintiff's serious medical needs and timely provided him with antibiotics and/or

21   other necessary treatment, he likely would have avoided the life-threatening illness and surgeries

22   he was forced to endure.

23         **Excessive Use of Force**

24         37.    After Plaintiff regained consciousness from his coma in July 2017, he remained in

25   the hospital handcuffed and leg-shackled. On numerous occasions between June and Oct 2017,

26   Doe Defendant deputies cuffed his wrists to opposite sides of his hospital bed for up to 30 hours

27   at a time. Since he was incapacitated, cuffing him in this way served no purpose but to inflict on

28

him excruciating pain. The Doe Defendant deputies watching also him periodically twisted his ears, and bent his fingers backwards, and slapped Plaintiff for no reason. That sadistic conduct eventually stopped, apparently because the MDF guards became aware that hospital nurses witnessed it.

**CLAIMS FOR RELIEF**

**COUNT ONE: 42 U.S.C. § 1983**
**Violation of the Fourteenth Amendment to the Constitution of the United States –**
**Deliberate Indifference to Serious Medical Needs, Health and Safety**

38.     Plaintiff brings Count One against Does 1-20 in their individual capacities.

39.     Based upon the allegations in this Complaint, the Doe Defendants were deliberately indifferent to Plaintiff's serious medical needs, health, and safety, in violation of the Fourteenth Amendment to the Constitution of the United States.

**COUNT TWO: 42 U.S.C. § 1983**
**Violation of the Fourteenth Amendment to the Constitution of the United States –**
**Excessive Use of Force**

40.     Plaintiff brings Count Two against Defendant Doe deputies who physically abused Plaintiff.

41.     Based upon the allegations in this Complaint, the Doe Defendants used excessive force on Plaintiff, in violation of the Fourteenth Amendment to the Constitution of the United States.

42.     Defendant Doe deputies caused Plaintiff prolonged excruciating pain and trauma.

**COUNT THREE: AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12102**

43.     Plaintiff brings Count Three against Defendants Contra Costa County and the Contra Costa County Sheriff's Department.

44.     Both Contra Costa County and the Contra Costa County Sheriff's Department receive federal funds from the Bay Area Urban Areas Security Initiative, a grant provided by the United States Department of Homeland Security. Upon information and belief, Contra Costa County and the Contra Costa County Sheriff's Department receive funding from additional federal sources.

45.     Plaintiff suffers from a severe, debilitating back injury, which was sustained immediately prior to his detention at MDF. Defendants were aware of this injury through medical records provided by Sutter Hospital, the fact that Plaintiff could not walk, and he communicated his condition and excruciating pain to jail staff. Contra Costa County and the Contra Costa County Sheriff's Department did not provide Defendant the wheelchair required by his condition, so at times he had to crawl to get around the facility.

46.     Plaintiff is a qualified individual with a disability.

47.     Plaintiff was excluded from participation in or otherwise discriminated against with regard to services, programs, or activities provided by Defendants Contra Costa County and the Contra County Sheriff's Department, both public entities.

48.     Such exclusion or discrimination was by reason of Plaintiff's disability.

### COUNT FOUR: REHABILITATION ACT
#### 29 U.S.C. § 794

49.     Plaintiff brings Count Four against Contra Costa County and the Contra Costa County Sheriff's Department.

50.     Plaintiff is handicapped within the meaning of the Rehabilitation Act.

51.     Plaintiff is otherwise qualified for the benefit or services provided by Defendants.

52.     Plaintiff was denied the benefit or services solely by reason of handicap.

### COUNT FIVE: NEGLIGENCE

53.     Plaintiff brings Count Five against the Doe Defendants who are medical professionals lawfully engaged in the practice of the healing arts who have treated Plaintiff.

54.     Based upon the allegations in this Complaint, Doe Defendants who are medical professionals lawfully engaged in the practice of the healing arts proximately caused Plaintiff serious injuries through their negligence and failure to meet the standard of care required by their profession, thereby violating California state law.

55.     Plaintiff also brings Count Five against Doe Defendants who handcuffed him to his hospital bed, as described above. In the alternative to the claim that they intended to torture him by cuffing him in untenable and unnecessary positions for numerous hours, they were

negligent in doing so. Such negligence was the proximate cause of his physical injuries and trauma.

### COUNT SIX: ASSAULT AND BATTERY

56.     Plaintiff brings Count Six against the Doe Defendant deputies who tortured him in his hospital bed by handcuffing and shackling him in extremely painful positions for no reason other than to torture him, and who twisted his ears, bent his fingers backwards, and slapped his face while he was restrained in the hospital bed.

57.     Plaintiff did not consent to any of the conduct described in the preceding paragraph, which was the proximate cause of his injuries and trauma.

### COUNT SEVEN: CALIFORNIA DISABLED PERSONS ACT

58.     Plaintiff brings Count Seven against Contra Costa County and the Contra Costa County Sheriff's Department and the Doe Defendants who were responsible for providing him with access to the jail.

59.     Defendants denied and/or interfered with the access of Plaintiff, an individual with disabilities, to MDF facilities.

### COUNT EIGHT: BANE ACT

60.     Plaintiff brings Count Eight against the Doe Defendant deputies who physically abused him while he was hospitalized and the Doe Defendant medical professionals who were deliberately indifferent to his serious medical needs.

61.     Based upon the allegations in this Complaint, Doe Defendants used excessive force against Plaintiff in violation of Civil Code § 52.1, with the intent of interfering with his federal and state rights through intimidation, threats and/or coercion.

62.     Further, Defendants' deliberate indifference to Plaintiff's medical needs rose to the level of intentional interference with his federal and state rights through intimidation, threats and/or coercion.

### JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment in his favor, to include:

a) General damages, including but not limited to, pain, suffering, and humiliation, in an amount determined according to proof;

b) Special damages, including but not limited to, past, present and/or future wage loss, income and support, and other special damages in an amount determined according to proof;

c) Reasonable attorney fees as provided by law;

d) Costs of court;

e) Such further relief in favor of Plaintiff as is just and proper.


Respectfully submitted,

/s/ Glenn Katon_____
Glenn Katon

ATTORNEY FOR PLAINTIFF